IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **BLAKE BAILEY,** | * |
| Plaintiff, | * |
| v. | *     Case No.: GJH-19-2540 |
| | * |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** *et al.* | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Blake Bailey brought this action against Defendants Washington Metropolitan Area Transit Authority ("WMATA") and Amalgamated Transit Union Local 689 (the "Union") alleging violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, based on the termination of his employment. ECF No. 1. Pending before the Court is WMATA's Motion to Dismiss, ECF No. 6, and the Union's Motion to Dismiss, ECF No. 11. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, both Motions are granted.

**I.    BACKGROUND[1]**

Plaintiff was an employee of Defendant WMATA from April 10, 2000 until June 14, 2018. ECF No. 1 ¶ 6. Most recently, Plaintiff was employed as a Rail Station Manager at the Greenbelt Station. *Id.* ¶ 7. As a WMATA employee, he was a member of the Union, which represents all WMATA employees. *Id.*

---

[1] For purposes of both Motions, the Court relies on the facts in the Complaint, ECF No. 1, and presumes they are true.

In September 2010, Plaintiff suffered a severe permanent injury to his left foot and left ankle, which caused nerve damage to his left foot and forced him to take a leave of absence from September 2010 to January 2013. *Id.* ¶ 9. Upon returning to work, Plaintiff informed his employer of the medications that he was using to treat his foot injury. *Id.* ¶ 10. On July 7, 2017, Plaintiff was referred for a drug and alcohol screen test, and he subsequently tested positive for marijuana. *Id.* ¶¶ 10, 11. On July 24, 2017, Plaintiff was required to enroll in WMATA's Employee Assistance Program ("EAP") and to comply with EAP's contractual requirements as a condition for his continued employment. *Id.* ¶¶ 13, 14. On December 6, 2017, Plaintiff successfully completed his EAP requirements and returned to normal work duty without restrictions. *Id.* ¶ 15.

On February 28, 2018, Plaintiff completed paperwork to take FMLA leave from February 28, 2018 to March 6, 2018. *Id.* ¶ 16. His request was rejected on the ground that more documentation was required, but his request was never approved even after he provided additional information, including medical records and prescriptions related to his permanent disability. *Id.* ¶¶ 17, 18.

On June 5, 2018, Plaintiff had his urine collected for a follow-up drug and alcohol screen test. *Id.* ¶ 19. The results indicated that Plaintiff tested positive for cocaine with 156 nanograms per milliliter (ng/ml), which is 6 ng/ml above the test cutoff limit of 150 ng/ml. *Id.* ¶ 20. This test result put Plaintiff in violation of WMATA's Substance Abuse Policy and EAP requirements for failing a second drug test, and therefore subjected him to termination *Id.* ¶ 21. That same day, however, he had taken a second drug test through a potential employer, Metropolitan Protective Service, and the test was negative for cocaine. *Id.* ¶ 22.

On June 12, 2018, Plaintiff visited his primary care provider, Dr. Roscoe Adams, MD, to take a new drug test and receive a doctor's note in order to be excused from work that day. *Id.* ¶¶ 23, 24. He also informed Dr. Adams that WMATA had not approved his request for FMLA leave and that his employer was requesting additional information to approve leave. *Id.* Later that same day, Plaintiff brought his medical prescriptions and the results of the drug test he had taken with Dr. Adams to WMATA's EAP office to challenge WMATA's previous test results, but the EAP officials refused to review Plaintiff's documentation. *Id.* ¶ 23. On June 14, 2018, WMATA officially terminated Plaintiff pursuant to its Substance Abuse Policy. *Id.* ¶ 25.

On June 29, 2018, Plaintiff filed a grievance with the Union. *Id.* ¶ 26. The only communications that Plaintiff received regarding his grievance over the next several months were in August 2018, when his union representative, Sheila Quarles, informed Plaintiff that the Union was going to initiate the second step in the grievance process, *id.* ¶ 27, and in November 2018, when Ms. Quarles informed him that the Union was going to initiate the third step in the grievance process, *id.* ¶ 28.

On February 25, 2019, Plaintiff received a letter from the Executive Board of the Union indicating that the Union was unable to reach a resolution on his grievance. *Id.* ¶ 29. The letter also indicated that the Union's Grievance Committee/Executive Board would present Plaintiff's grievance and its recommendation to "drop" the grievance at the Union's membership meetings on March 5 and 6, 2019. *Id.* ¶ 30. At those meetings, Plaintiff would have the opportunity to argue his position that the Union should continue to pursue his grievance. *Id.* At the March 5 meeting, Plaintiff was not permitted to speak until late in evening, at approximately 11:00 p.m., when many union members had already left to go home. *Id.* ¶ 31. When he was permitted to speak, he discussed his medical conditions and the medications he had been using at the time of

his positive drug test. *Id.* ¶ 32. He explained that he had been using amoxicillin to treat the illness that had kept him out of work prior to his urine test on June 5, 2018, and that, according to his research, amoxicillin has been known to create false positives for cocaine use in urine drug tests. *Id.* ¶ 32. At the March 6 meeting, Plaintiff repeated much of the same information. *Id.* ¶ 33. The Executive Board, however, refused to review any documentation that Plaintiff had provided for its consideration, *id.*, and he was informed that the Executive Board voted to no longer pursue the grievance. *Id.* ¶ 34. Plaintiff has been without full-time employment since his termination by WMATA and has been unable to acquire employment on par with his previous employment. *Id.* ¶ 35.

On September 3, 2019, Plaintiff filed a Complaint in this Court alleging breach of the collective bargaining agreement and duty of fair representation in violation of the LMRA against both Defendants (Count I) and unlawful interference and denial of FMLA benefits in violation of the FMLA against Defendant WMATA (Count II). ECF No. 1. On November 5, 2019, WMATA filed a Motion to Dismiss. ECF No. 6. Plaintiff filed a response on November 19, 2019, ECF No. 7, and WMATA filed a reply on November 25, 2019, ECF No. 12. On November 21, 2019, the Union also filed a Motion to Dismiss. ECF No. 11. Plaintiff filed a response on December 12, 2019, ECF No. 15, and the Union filed a reply on December 27, 2019, ECF No. 16.

II.     **DISCUSSION**

     **A. LMRA Claim (Count I)**

Defendants contend that the LMRA claim alleged in Count I must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] Rule 12(b)(6) permits a

---

[2] Defendant WMATA makes an alternative argument that it is entitled to Eleventh Amendment immunity from suit challenging its decision to terminate Plaintiff. *See* ECF No. 6 at 4. But Plaintiff does not simply sue WMATA for wrongful termination; he has sued it for breaching the collective bargaining agreement, *see* ECF No. 1 ¶¶ 36–41, and "WMATA enjoys no immunity from such suits," *see Fraternal Order of Police Metro Transit Police Labor*

4

defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d

---

*Comm., Inc. v. Washington Metro. Area Transit Auth.*, 780 F.3d 238, 244 n.6 (4th Cir. 2015). Thus, the Court will not dismiss the LMRA claim for lack of subject-matter jurisdiction.

5

844, 847 (4th Cir. 1979). Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Plaintiff has sued Defendants pursuant to § 301 of the LMRA, which allows litigants to bring "[s]uits for violation of contracts between an employer and a labor organization" in federal district court. *See* 29 U.S.C. § 185. In a "so-called hybrid § 301 action," where a plaintiff sues both his employer and his union, the plaintiff must allege "*both* 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." *Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 178–79 (4th Cir. 2016) (quoting *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original). The claims against the employer and the union are "interlocked," meaning "neither claim is viable if the other fails," but "federal courts review allegations against employers for breach of collective bargaining agreements *only* when an employee has first proved that the union representing him breached its duty of fair representation." *Thompson*, 276 F.3d at 657 (citing *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)) (emphasis in original).

A labor union breaches its duty of fair representation if its conduct toward any of its members is "arbitrary, discriminatory, or in bad faith." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 354 F.3d 270, 274 (4th Cir. 2003) (quoting *Vaca*, 386 U.S. at 190) (internal quotation marks omitted). The union's conduct is "arbitrary" if it is "so far outside a wide range of reasonableness" as to be "wholly irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)) (internal quotation marks omitted). While arbitrariness is an objective quality, whether a union acts in bad faith or discriminatorily "depends on the subjective

motivation of the union's officials." *Id.* at 275. "The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice." *Id.* at 276 (quoting *O'Neill*, 499 U.S. at 81). Bad faith may be established if a plaintiff can show that union officials engaged in "fraud, or deceitful or dishonest action." *Id.* (quoting *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993)) (internal quotation marks omitted). "[M]ere negligence, poor judgment or inefficiency on the part of the union will not satisfy a claim for breach of the duty of fair representation." *Thomson v. Verizon Md., Inc.*, 140 F. Supp. 2d 546, 551 (D. Md. 2001) (citing *Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 95 (4th Cir. 1987)). In addition, a plaintiff must demonstrate a "substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings." *Id.* (quoting *Ash v. United Parcel Serv.*, 800 F.2d 409, 411 (4th Cir. 1986)) (internal quotation marks omitted).

  Plaintiff claims that the Union violated its duty of fair representation by declining to pursue his grievance against WMATA. The Complaint lacks any allegation that the Union's decision was the result of fraud, deceitful or dishonest action, or invidious discrimination, but it does allege that the decision not to pursue the grievance further was "arbitrary" and "lacked a rational basis." *See* ECF No. 1 ¶ 42. "The grievance processes cannot be expected to be error-free," *Hines v. Anchor Motor Freight*, 424 U.S. 554, 571 (1976), and an employee does not "ha[ve] an absolute right to have his grievance taken to arbitration," *Vaca*, 386 U.S. at 191. "As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation." *Thompson*, 276 F.3d at 658.

7

Here, the Complaint does not sufficiently allege that the Union ignored a meritorious grievance or handled Plaintiff's grievance in a perfunctory manner. Rather, it alleges that the Union pursued the grievance through the first, second, and third stages of the grievance process, but was ultimately unable to resolve the grievance with WMATA, ECF No. 1 ¶¶ 26–29; ECF No. 1-2, and that it provided Plaintiff with the opportunity to be heard by the Union's membership and Executive Board before there was a final vote regarding the Union's decision to drop the grievance, ECF No. 1 ¶¶ 30–34. Aside from alleging that the Union did not communicate with Plaintiff or engage him in the process, *see id.* ¶ 40, the Complaint lacks any allegation as to what the Union did or do not do while handling the grievance and how that conduct was unreasonable or a deviation from the appropriate standard of care. Although Plaintiff does contend that his opportunity to present to the Union's membership occurred too late in the evening to be meaningful and the Executive Board refused to review documents during his presentations, the grievance process need not be "error free," *see Hines*, 424 U.S. at 571, and there is no allegation that the content of the documents in question was different than the information Plaintiff included in his initial grievance or his oral presentation to the Union's membership such that the Union's decision not to review the documents during the meetings was "wholly irrational," *see Jeffreys*, 354 F.3d at 274. Thus, the Complaint fails to state a § 301 claim under the LMRA because the Plaintiff has not sufficiently alleged that the Union breached the duty of fair representation. Accordingly, Count I must be dismissed.

Even if the Plaintiff had adequately pled breach of the duty of fair representation, however, the LMRA claim would still fail because the Complaint lacks sufficient allegations that WMATA breached the collective bargaining agreement. *See Groves*, 815 F.3d at 178. Plaintiff contends that WMATA violated the collective bargaining agreement by terminating him without

cause, ECF No. 1 ¶ 37, but the Complaint specifically alleges that Plaintiff tested positive on two different WMATA-administered drug tests, that WMATA's Substance Abuse Policy mandates termination after a second positive drug test, and that Plaintiff was ultimately terminated pursuant to that Policy. *Id.* ¶¶ 12, 19–21, 25. The fact that Plaintiff claims he did not use cocaine and his urine test results were due to a false positive created by his use of the prescribed antibiotic, amoxicillin, *id.* ¶ 37, does not transform his termination pursuant to the terms of the Substance Abuse Policy into a termination without cause. Thus, the Complaint fails to allege that WMATA violated the collective bargaining agreement. Because the Complaint fails to allege either necessary component of a § 301 claim, Count I is dismissed.

### B. FMLA Claim (Count II)

Defendant WMATA contends that the FMLA claim alleged in Count II must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because WMATA possesses Eleventh Amendment immunity and therefore the Court lacks subject-matter jurisdiction over the claim. "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768

(4th Cir. 1991)). Where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 19 L.Ed. 264 (1868)).

Pursuant to the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Lee-Thomas v. Prince George's Cty. Public Schools*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)) (internal quotation marks omitted). "The States' immunity also extends to 'state agents and state instrumentalities.'" *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). "WMATA was created by a compact enacted by the Congress and to which the Commonwealth of Virginia, the State of Maryland and the District of Columbia are signatories."[3] *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000). Courts "have consistently recognized that in signing the WMATA Compact, Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions." *Id.* (listing cases); *see also Delon Hampton & Assoc. v. WMATA*, 943 F.2d 355, 359 (4th Cir. 1991). After Congress passed the FMLA, the Supreme Court held that Congress did not validly abrogate Eleventh Amendment immunity to suits for money damages under the FMLA's self-care provision.[4] *Battle v. Md. Dep't of Labor, Licensing & Regulation*, No. JKB-13-1436, 2014 WL 1820840, at *2 (D. Md. May 7, 2014) (citing *Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 43–44 (2012)).

---

[3] In Maryland, this compact is codified as MD. CODE ANN., TRANSP. § 10-204.
[4] In his opposition, Plaintiff contends that the FMLA's self-care provision *should* abrogate WMATA's Eleventh Amendment immunity. ECF No. 7 at 6. The Supreme Court has explicitly rejected this notion, *see Coleman*, 556 U.S. at 43–44, and Plaintiff has provided no persuasive reason for the Court to contradict established and binding Supreme Court precedent, so the Court declines to hold that the FMLA's self-care provision abrogates Eleventh Amendment immunity.

10

Here, Plaintiff alleges that Defendant WMATA unlawfully denied his request for FMLA leave to care for his own medical condition, and he seeks money damages, including "lost wages and benefits, compensation for pain and suffering and emotional distress, medical expenses, liquidated damages, interest on all applicable sums, attorney's fees, costs, [and] front pay…." ECF No. 1 ¶¶ 44–56. WMATA's Eleventh Amendment immunity bars Plaintiff's claim for money damages under the FMLA's self-care provision, so Count II is dismissed.[5]

### C. Leave to Amend

In his response to both Motions, Plaintiff requests leave to amend the Complaint should the Court find it deficient. ECF No. 7-1 at 9; ECF No. 15-1 at 11. Plaintiff, however, has not included a proposed amended complaint, as required by Loc. R. 103.6(a), and he has not otherwise explained the nature of his proposed amendments. As a result, the Court is unable to make a determination as to whether amendment would be futile. *See Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (stating that a court need not give leave to amend "where the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile" (internal quotation marks omitted)). Plaintiff's request for leave to amend is therefore denied without prejudice.

### D. Attorney's Fees

In its Motion to Dismiss, the Union requests that the Court award it attorney's fees because Plaintiff's case is frivolous. *See* ECF No. 11 at 11. In fair representation cases such as

---

[5] In his opposition, Plaintiff attempts to reframe his FMLA claim as a claim for disability discrimination pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq. See* ECF No. 7 at 4–6. Plaintiff has not alleged a Rehabilitation Act claim, *see generally* ECF No. 1, and a complaint may not be amended by a brief in opposition to a motion to dismiss, *see State Farm Mutual Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019). The Court will therefore decline to interpret Plaintiff's FMLA claim as a Rehabilitation Act claim.

11

this, courts have awarded attorney's fees where a case is initiated in bad faith. *See Richardson v. Commc'ns Workers of Am., AFL-CIO*, 530 F.2d 126, 132 (8th Cir. 1976) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)); *Rogers v. Amalgamated Transit Union, Local 689*, No. 1:14-cv-1650, 2017 WL 1628867, at *3 (D.D.C. May 1, 2017). Here, aside from referencing other cases in which union members have filed frivolous lawsuits against the Union, the Union provides no evidence to suggest that Plaintiff has acted in bad faith in this particular case. The Court will therefore decline to award attorney's fees.

### III. CONCLUSION

For the foregoing reasons, WMATA's Motion to Dismiss is granted and the Union's Motion to Dismiss is granted. A separate Order shall issue.


Date: June   16, 2020                                    /s/_____
                                                         GEORGE J. HAZEL
                                                         United States District Judge